## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MICHAEL MUCHNICKI,      ) | |
|          ) | |
|     Plaintiff,     ) | |
|          ) | |
| v.     ) | Case No. 1-13-CV-01304-TWT |
|          ) | |
| WINDSOR MANAGEMENT SERVICES,  ) | |
| INC. and MUNICH REINSURANCE     ) | |
| AMERICA, INC.,     ) | |
|          ) | |
|     Defendants.     ) | |
|          ) | |

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS REGARDING DISCOVERY ISSUES INVOLVING INTERROGATORIES NOS. 7 AND 8, AND DOCUMENT REQUESTS NOS. 56-68

In this dispute Plaintiff contends that Defendants have failed to respond substantively to either his Interrogatories Nos. 7 and 8 or his Document Requests Nos. 56 through 68, which primarily relate to damages asserted by the Defendants in their Counterclaim. Plaintiff has moved to compel substantive responses to all such requests.

Interrogatories Nos. 7 and 8

Plaintiff's Interrogatory No. 7 seeks an identification of all damages sought by Defendants in their Counterclaim including the amount, the bases, and the

identification of documents evidencing such damages.  Interrogatory No. 8 seeks

identification of "all persons with knowledge" of the alleged damages.

In their responses to Interrogatories Nos. 7 and 8, Defendants first assert a

number of "formal" objections and further contend that such Interrogatories are, in

reality, "contention" interrogatories that cannot be answered fully until the close of

discovery.

In responding to Plaintiffs' motion, Defendants reiterate the position staked

out in their original responses to Interrogatories Nos. 7 and 8 make the observation

that:

> This [Wellcare sales and other information] which had been given
> previously to Plaintiff provides "thorough details" concerning the
> "substantial avoidable losses" that Plaintiff's mismanagement caused
> Defendants to suffer as alleged in the Counterclaim.

While less than clear, the implication of Defendants' statement is that they

are seeking counterclaim damages relative to the losses allegedly occasioned by

Plaintiff's asserted mismanagement of Windsor's operations.  Based on

Defendants' answers to previous interrogatories, those alleged mismanagement

damages could exceed $500 million.

While reviewing various pleadings and other documents relating to

Plaintiff's motion, the Discovery Special Master received an email from counsel

for Defendants requesting the opportunity to be further heard on this matter.  That

2

request was granted and a telephonic hearing was set for noon on April 18, 2014. In connection with granting that request, the Special Master advised the parties of his tentative decision relative to Plaintiff's motion.

The April 18, 2014 hearing was held by telephone beginning at noon and in attendance were Mr. Bernstein and Mr. Slocum for Defendants, and Mr. Alloy and Ms. Gage for the Plaintiff.  At the outset of the hearing, Mr. Bernstein stated that it was the Defendants' present intention not to assert a claim for damages relative to Plaintiff's alleged mismanagement of Windsor.  He stated that Defendants had not made a final decision on that issue, but agreed that such decision would be made and communicated in writing to the Plaintiff's counsel and the Special Master by no later than the end of business on May 5, 2014.  Plaintiff's counsel agreed to that schedule.

In addition to "mismanagement" damages, Defendants have stated that they are seeking damages in respect of Plaintiff's allegedly breaching various of Munich Re's policies including its Code of Conduct and Ethics.  In the April 18 hearing, Defendants' counsel reaffirmed that they are continuing to seek that category of damages and stated they had produced the documentation they have relative to Plaintiff's conduct at issue.

In addition to producing such documents, Defendants have an obligation promptly to advise Plaintiff of the amount of damages they currently contend that

Defendants suffered by virtue of Plaintiff's alleged wrongful conduct, the bases upon which such damages claims are being made, and to identify the individuals who have meaningful knowledge or information relative to the amount and bases for their claimed damages.  Moreover, they have the obligation to identify specifically the documents which they have produced which substantively relate to or identify the amount and bases of such damages.

Requests for Production Nos. 56-68

Plaintiff also seeks to compel substantive responses to his Document Requests Nos. 56-66, which primarily concern the Defendants' damages claims associated with Plaintiff's alleged mismanagement of Windsor.  Given that Defendants have represented that they do not presently intend to pursue that type of damages, it is premature to determine the propriety of compelling responses to Requests Nos. 56-66.  If on May 5, 2014 Defendants change their current position and state that they are seeking such mismanagement damages, then it is the Special Master's recommendation that they produce all documents sought in Requests Nos. 56 through 66 by no later than May 8, 2014; and if such documents have already been produced, then to identify specifically which documents they are relying upon in respect of each component of their mismanagement damages claims.

Plaintiff's motion also includes Requests Nos. 67 and 68.  These two Requests seek "all documents that evidence Annette Ziegler's and Donald S. Bates' involvement with the decision to terminate Plaintiff 'with cause." Defendants objected on various grounds but stated that they would produce relevant, non-privileged documents.  Plaintiff has not articulated any basis in his motion that would support compelling any further production relative to Requests No. 67 and 68.  Accordingly, the Special Master recommends that Plaintiff's motion be DENIED as to Requests Nos. 67 and 68.

This 25th day of April, 2014.

*Hunter R. Hughes*
Hunter R. Hughes
Special Master Pursuant to the Court's
January 17, 2014 Order

851036.4

5